CHOICE HOTELS INTERNATIONAL INC,

                Plaintiff,

                                        Case No. 25-cv-0848-bhl

      v.

BABA NANAK HOSPITALITY GROUP CORP,
HARDEEP ARORA and PARMEET ARORA,

                Defendants.

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT IN PART

---

On June 13, 2025, Plaintiff Choice Hotels International Inc., (Choice Hotels) filed a complaint alleging that Defendants Baba Nanak Hospitality Group, Corp. (Baba Nanak), Hardeep Arora, and Parmeet Arora infringed on Choice Hotels' trademarks. (ECF No. 1.) Defendants accepted service on June 26, 2025, (ECF Nos. 5, 6, & 7), but never answered or otherwise responded to the complaint. Accordingly, on August 13, 2025, the Clerk entered default pursuant to Federal Rule of Civil Procedure 55(b)(2) and, on September 25, 2025, Choice Hotels moved for entry of a default judgment. (ECF No. 10.) Baba Nanak then filed a bankruptcy petition and this case was automatically stayed pursuant to 11 U.S.C. §362. (ECF No. 15.) The bankruptcy case was short-lived. The Bankruptcy Court dismissed Baba Nanak's bankruptcy case on December 18, 2025, terminating the automatic stay and allowing this case to proceed. (ECF No. 16-1.) Throughout these proceedings, Defendants have still not otherwise responded to the complaint or default judgment motion. Accordingly, the Court will now grant Choice Hotels' motion for default judgment. For the reasons provided below, however, the Court will enter judgment for only a portion of the relief Choice Hotels has requested.

### FACTUAL BACKGROUND

Choice Hotels is a lodging franchisor and offers lodging services under a variety of different brands, including the Clarion family of trademarks. (ECF No. 1 ¶¶13–17.) These marks

include sixteen relevant trademark registrations[1], the majority of which have achieved incontestable status pursuant to 15 U.S.C. §1065. (*Id.* ¶¶20–21; ECF No. 1-1.)

Baba Nanak is a Wisconsin corporation with a place of business at 6331 South 13th Street in Milwaukee Wisconsin (the Property). (ECF No. 1 ¶3.) Defendants Hardeep Arora and Parmeet Arora are both natural persons, who each own 50% of Baba Nanak. (*Id.* ¶¶4–5.)

On or about December 31, 2020, Choice Hotels entered into a Franchise Agreement with Defendants, authorizing them to operate a Clarion franchise hotel at 6331 South 13th Street, in Milwaukee. (*Id.* ¶27; ECF No. 1-2.) Choice Hotels also entered into a Guaranty Agreement with Hardeep and Parmeet Arora, under which they personally guaranteed the obligations imposed on Baba Nanak. (ECF No. 1 ¶28; ECF No. 1-3.) The Franchise Agreement licensed Defendants to use the Clarion family of marks while the hotel was in operation and required them to immediately discontinue use of all marks upon termination of the Franchise Agreement. (ECF No. 1 ¶¶30–31.)

Sometime before October 30, 2023, Defendants ceased operations at the property. (ECF No. 1 ¶¶32–33.) Days later, on November 2, 2023, Choice Hotels issued a Notice of Termination to Defendants. (*Id.* ¶34; ECF No. 1-4.) The Notice of Termination advised Defendants that, under the terms of the Franchise Agreement, Choice Hotels was entitled to $345,578.74 ($160,553.41 in past due franchise fees and $185,025.33 for the remainder of the franchise term). (ECF No. 1 ¶36; ECF No. 1-4 at 2.) The Notice of Termination also instructed Defendants to remove any items bearing the Choice Hotels marks, including, but not limited to, signage, advertising, items within hotel rooms and the hotel, and internet domain names. (ECF No. 1 ¶38; ECF No. 1-4 at 2–3.) The Notice of Termination also demanded that Defendants certify that they had de-branded and ceased using the Clarion family of marks at the Property. (ECF No. 1 ¶40.) Defendants did not comply with the Notice's requirements. (*Id.* ¶¶42–46.)

On June 11, 2024, Choice Hotels issued a Notice of Service Mark Infringement to Defendants, instructing them to cease using the marks immediately and "provide written and photographic evidence" that they had discontinued use of the marks by June 19, 2024. (ECF No. 1 ¶¶47–48; ECF No. 1-5 at 4.) Defendants did not comply with this notice either. (ECF No. 1 ¶49.) Defendants continued to display the marks on the outside of the Property, as verified by a Choice Hotels' field representative's site inspections of the Property on June 26, 2024, and

---

[1] The relevant registrations include: 6212588, 5951847, 5802347, 5802346, 3570057, 3435884, 2960376, 2943367, 2333128, 2031850, 2008016, 2000041, 1799824, 1710603, 1710601, and 1703941. (ECF No. 1 ¶20.)

September 20, 2024. (*Id.* ¶¶51–53.) Choice Hotels sent a Second Notice of Infringement to Defendants on September 23, 2024. (*Id.* ¶54; ECF No. 1-6.) This Notice again instructed Defendants to immediately cease using the marks, and certify that it had done so, this time by September 30, 2024. (ECF No. 1 ¶56; ECF No. 1-6 at 3.) Defendants again failed to comply. (ECF No. 1 ¶57.) An April 24, 2025 site inspection by a Choice Hotels field representative showed the Property still had signage that included the marks. (*Id.* ¶¶59–60.)

**LEGAL STANDARD**

"A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012) (quoting *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007)). "Upon default, the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Id.* (citing *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989)).

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter a judgment by default without a hearing on damages if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

**ANALYSIS**

Choice Hotels alleges that Defendants, its former franchisees, violated the Lanham Act by continuing to display the Clarion family of marks at the Property after the franchise had terminated. (ECF No. 1.) Accepting Choice Hotel's well-pleaded allegations as true, the Court concludes that Choice Hotel has established Defendants' liability. The record does not, however, establish Choice Hotel's right to all of the many forms of relief it has requested.

## I. Choice Hotels' Well-Pleaded Allegations Establish the Defendants' Liability.

Choice Hotels asserts four different claims for relief. Its first claim is based on Defendants' alleged violation of 15 U.S.C. §1114 by infringing on Choice Hotels' trademarks as a holdover franchisee. (*Id.* ¶¶63–72.) Its second claim is for unfair competition under 15 U.S.C. §1125(a). (*Id.* ¶¶73–80.) Choice Hotels' third and fourth claims are for trademark infringement and unfair competition under Wisconsin common law. (*Id.* ¶¶81–96.) The complaint properly alleges all elements of all four claims, and Defendants' default therefore renders them liable on all four causes of action.

Choice Hotels' trademark infringement claim has two elements. It must show both that (1) it has a protectable trademark, and (2) that Defendants are using a mark that creates a likelihood of consumer confusion. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). Choice Hotels has established both elements. It has shown that it has a protected trademark by attaching copies of its relevant United States Trademark Registrations to the Complaint. (ECF No. 1-1.) A certificate of registration of a mark constitutes "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. §1057(b). Choice Hotels has also shown a likelihood of confusion. It is well-established that when a franchise is terminated, a former franchisee's continued use of the trademark is a violation of trademark law. *See Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *see also Dunkin' Donuts Franchised Restaurants v. Elkhatib*, No. 09 C 1912, 2009 WL 2192753, at *5 (N.D. Ill. July 17, 2009). The likelihood of confusion exists as a matter of law when a licensee continues to use marks owned by the licensor after the termination of the license. *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F.Supp.2d 914, 922 (C.D. Ill. 2000); *see Gorenstein,* 874 F.2d at 435. Defendants are former franchisees; their franchise agreement terminated, but Defendants continued to display the Clarion family of marks, albeit on signs for a now-defunct hotel.

Choice Hotels' false designation of origin claim also has two elements. This claim requires Choice Hotels to show that its mark is entitled to protection as a trademark and that the false designation of origin creates a likelihood of confusion. *Rust Env't & Infrastructure*, *Inc. v. Teunissen*, 131 F.3d 1210, 1213–14 (7th Cir. 1997); 15 U.S.C. §1125(a)(1)(A). As discussed above, Choice Hotels has shown it is the owner of the valid Clarion family of marks, Defendants are holdover franchisees that continued to use those marks after the termination of their franchise, and this continued use is likely to cause confusion. Choice Hotels' allegations establish Defendants' liability.

The elements of Choice Hotels' third and fourth claims under Wisconsin common law are essentially identical to the elements of their federal counterparts. *See e.g., Echo Travel, Inc. v. Travel Assocs., Inc.,* 870 F.2d 1264, 1266 (7th Cir. 1989); *Ritter v. Farrow*, 955 N.W.2d 122, 128 (Wis. 2021); *Child.'s Med. Grp., Inc. v. Lake Cty. Pediatrics, S.C.*, 417 F.Supp.3d 1152, 1156–57 (E.D. Wis. 2019); *A&L Indus., LLC v. Weaver Enters.*, *Ltd.*, No. 20-cv-552-slc, 2021 WL 3856745,

at *8 (W.D. Wis. Aug. 30, 2021). Choice Hotels alleged that it holds valid marks, and that Defendants continued to use them as holdover franchisees after the termination of the franchise agreement, leading to a likelihood of confusion as a matter of law. Choice Hotels' allegations establish Defendants' liability on their state law claims too.

## II. Choice Hotels Is Entitled to Only Some of Its Requested Relief.

In its default judgment motion, Choice Hotels requests a variety of relief. It requests a number of forms of equitable and monetary relief, including a permanent injunction, money damages equal to Defendants' estimated profits for the term of the holdover, and Choice Hotels' own estimated damages trebled, plus costs. (ECF No. 11 at 27.) Choice Hotels also asks the Court to find that this is an "exceptional case" and award attorneys' fees under 15 U.S.C. §1117(a). (*Id.*) Only a portion of this requested relief is appropriate.

### A. Choice Hotels is Entitled to a Permanent Injunction.

Choice Hotels first requests a permanent injunction prohibiting Defendants from using the Clarion marks, requiring Defendants to remove all signage and other indicia bearing the Clarion marks, to destroy any item in their possession or control bearing any Clarion marks, and to file a sworn statement of compliance, as provided in 15 U.S.C. §1116(a). (*Id.* at 20–21.)

The Lanham Act authorizes the Court to grant permanent injunctive relief in cases of trademark infringement "according to the principles of equity and upon such terms as the court may deem reasonable . . . ." 15 U.S.C. §1116(a). A party seeking a permanent injunction must show (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that a remedy in equity is warranted in light of the balance of hardships; and (4) that the public interest would not be harmed by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A prevailing plaintiff in trademark infringement cases is afforded "a rebuttable presumption of irreparable harm." 15 U.S.C. §1116(a).

Because Choice Hotels has established a trademark violation, it is afforded a rebuttable presumption of irreparable injury. By virtue of their defaults, Defendants have not rebutted that presumption. Choice Hotels has also shown that its remedies at law are inadequate to compensate it for its injury because its damages cannot be proved with reasonable certainty, and absent an injunction, it cannot ensure control of its marks. The balance of hardships also favors Choice Hotel and the public interest is served by an injunction prohibiting further infringing behavior.

Accordingly, the Court will issue, by separate order, the requested permanent injunction against Defendants. *See MillerCoors LLC v. Anheuser-Busch Cos.*, 940 F.3d 922 (7th Cir. 2019); Fed. R. Civ. P. 65(d).

**B. Choice Hotels Is Entitled to Recover Some Monetary Damages.**

Choice Hotels requests a number of different forms of relief, including Defendants' profits during the period of their holdover, Choice Hotels' own estimated damages trebled, and its costs. (*Id.* at 21–25.) Under 15 U.S.C. §1117(a) plaintiffs alleging violations of Sections 1125(a), 1125(d), or willful violations of 1125(c), may "recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." These remedies are nonexclusive; plaintiffs can pursue and receive all of them. *Dyson Technology Ltd. v. David 7 Store*, 132 F.4th 526, 528 (7th Cir. 2025) (citing *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1347 (7th Cir. 1994)). The Court will address each of Choice Hotels' requests for relief along with the support it has provided for them.

**1. Choice Hotels Has Not Shown It Is Entitled to Defendants' Profits.**

Section 1117(a) specifies that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." It also provides that "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. §1117(a).

Choice Hotels has not shown that it is entitled to Defendants' profits. Choice Hotels admits it does not know when Defendants stopped operating a hotel at the Property and therefore does not know what revenue was generated, if any, during the holdover period. (ECF No. 11 at 21; ECF No. 12 ¶5.) Choice Hotels alleges in its complaint that Defendants stopped operating a hotel at the Property sometime before October 30, 2023, and that Choice Hotels terminated the Franchise Agreement for that reason. (ECF No. 1 ¶32 ("Prior to October 30, 2023, Baba Nanak defaulted on its material obligations under Section 10 of the Franchise agreement by ceasing hotel operations at the Subject Property.").) Now, in Choice Hotel's supporting declaration, Stuart Kreindler, Assistant General Counsel for Choice Hotels, contradicts the complaint, the November 2, 2023 Notice of Termination, and various photographs included in the complaint that suggest the hotel was vacant, by stating that he believes Defendants were still operating a hotel at the Property. (ECF No. 12 ¶¶4–5; ECF No. 1 ¶¶32, 46, 51; ECF No. 1-4 at 1.)

Choice Hotels estimates Defendants' profits by "using the revenue data historically generated by" the Property. (ECF No. 11 at 21.) Defendants stopped reporting monthly revenue to Choice Hotels in January 2023 but previously reported "average gross room revenues" during February 2022 to January 2023 of $42,406.66 per month. (ECF No. 12 ¶¶7–9.) Choice Hotels asserts it "can arrive at a reasonable estimate of infringer's profits by multiplying the average monthly gross room revenue" by the number of months of the holdover (22), for a total of $932,946.52. (*Id.* ¶¶10–11.)

This basis for estimating revenue would be reasonable if there was some reason to believe Defendants operated the Property as a hotel during the holdover period. But Choice Hotels has taken the position that Defendants did not operate a hotel at the Property during this period and submitted documentary evidence that suggests it *did not* operate a hotel during this period. The Court therefore will not award Choice Hotels their estimate of Defendants' profits.

### 2. Choice Hotels is Entitled to Recover Its Estimated Damages, the Loss of Its Royalties.

Section 1117(a) also provides that a prevailing plaintiff may recover its damages. In cases involving holdover franchisees, courts generally consider royalties that would have been paid to a trademark owner during the holdover period to be a proper measure for damages. *Ramada Inns, Inc. v. Gadsen Motel Co.*, 804 F.2d 1562, 1565–66 (11th Cir. 1986); *Ramada Worldwide, Inc. v. Homewood Hotel*, *Inc.*, No. 06 C 11, 2007 WL 9812854, at *5 (N.D. Ill. Feb. 5, 2007); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992) (accepting idea of reasonable royalty fee for damage calculation in trademark infringement).

Choice Hotels asserts it is also entitled to its estimated damages. (ECF No. 11 at 23.) The applicable Franchise Agreement specifies royalties; Defendants agreed to pay monthly fees to Choice Hotels in an amount equal to 8% of the preceding month's gross room revenues. (ECF No. 1-2, §4 (specifying a monthly "royalty fee" of 5% of the prior month's gross room revenues, and a monthly "system fee" of 3% of the preceding month's gross room revenue).) Using a monthly gross room revenue rate of $42,406.66, estimated from the last time period that Defendants reported, Choice Hotels estimates that the average monthly fees for the Property would have been $3,392.53. (ECF No. 11 at 23; ECF No. 12 ¶¶12–19.) It notes that the term of the holdover was at least 22 months, and that Defendants would have likely paid at least $74,635.66 in monthly fees during the term of the holdover, had they continued to operate a hotel as if the

Franchise Agreement were still in place. (ECF No. 11 at 23.) The Court will award Choice Hotels its damages, as estimated by its expected monthly fees under the Franchise Agreement for the term of the holdover, in the amount of $74,635.66.

Choice Hotels further requests that the Court treble its damages award pursuant to 15 U.S.C. §1117(a). (ECF No. 11 at 24.) It contends that the estimated damages are inadequate because merely forcing the infringer to pay the estimated franchise fee would not deter would-be infringers. (*Id.*)

As the Seventh Circuit has repeatedly established, enhancing an award of damages for willful and deliberate infringement, or declining to do so, is within the discretion of district courts. *District Re/Max N. Cent., Inc. v. Cook*, 64 Fed. App'x 562, 565–66 (7th Cir. 2003) (citing *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 745 (7th Cir. 1985)). Plaintiff cites *LaQuinta Corp. v. Heartland Properties, LLC*, 603 F.3d 327, 342 (6th Cir. 2010), for the proposition that tripling a damages award is not necessarily punitive. In that case, the defendant used the plaintiff's hotel-related trademarks in advertising and on its website long after its franchise agreement was terminated, while its businesses continued to operate, and even used the marks to advertise a new water park. *Id.* at 343. In *this* case, Defendants presumably stopped managing a hotel at the Property but kept the Clarion Marks visible on signs for a seemingly defunct hotel. Because Choice Hotels' own representations suggest Defendants stopped operating a hotel at the Property before the franchise agreement was terminated, the Court will, in its discretion, decline to treble Choice Hotels' damages.

### 3. Choice Hotels May Recover Its Costs.

The Lanham act allows prevailing plaintiffs to recover their costs. 15 U.S.C. §1117(a). The Court will therefore award Choice Hotels its costs in the amount of $1,024.00. (ECF No. 13 ¶2.)

### C. The Court Will Not Designate This Case as Exceptional, and Choice Hotels May Not Recover Its Attorneys' Fees.

Under the Lanham Act, courts may "in exceptional cases . . . award reasonable attorney fees to the prevailing party." 15 U.S.C. §1117(a). An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). District courts determine whether a case is exceptional in a "case-by-case exercise of their

discretion, considering the totality of the circumstances." *Id.* Choice Hotels requests the Court designate this case as an exceptional case and allow it to submit a petition for attorneys' fees. (ECF No. 11 at 25–26.)

While Choice Hotels' litigation position is clearly strong, because holdover franchisees who continue to use trademarks cause consumer confusion as a matter of law, *Bunn-O-Matic Corp.*, 88 F.Supp.2d at 922, Defendants' conduct in litigation has not been so extraordinary as to merit an exceptional case designation. Defendants defaulted and did not participate in this litigation. Baba Nanak filed a petition for bankruptcy on October 7, 2025. While this is not ideal behavior, it is certainly not out of the ordinary and does not put this case outside the mine run of cases and render it exceptional. *See District Re/Max N. Cent., Inc.*, 64 Fed. App'x at 565–66. The Court will not designate this case as "exceptional," and Choice Hotels is not entitled to attorney's fees.

## CONCLUSION

**IT IS HEREBY ORDERED** that Choice Hotels' motion for default judgment, ECF No. 10, is **GRANTED in part**, and **DENIED in part**. The Court will issue a permanent injunction enjoining Defendants by separate order in compliance with *MillerCoors LLC* and Federal Rule of Civil Procedure 65(d). The Clerk of Court is directed to enter judgment in favor of Plaintiff Choice Hotels International Inc., and against Defendants Baba Nanak Hospitality Group, Corp, Hardeep Arora, and Parmeet Arora, jointly and several, in the amount of $74,635.66 in damages, plus costs of $1,024.00.

Dated at Milwaukee, Wisconsin on June 2, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge